Parsons, C. J.
This action is assumpsit for money had and received ; and judgment is to be rendered according to the conclusions of law from the facts stated in a case agreed by the parties.
It appears that the defendants are a regular Congregational society of Christians; and that within the limits of the parish there is a regular Episcopal society of Christians, of which the plaintiff is the rector and incumbent; and that the action is brought to recover of the parish divers sums of money assessed for the support of public worship in the Congregational society on a number of the inhabitants of the parish, who, the plaintiff says, are regular members of his society ; that they have requested that their ministerial taxes may be paid to him ; that he has demanded the same of the parish ; and has delivered to the parish a certificate, signed by himself and a committee of the Episcopal society, certifying that those persons are members of the plaintiff’s church, agreeably to the form required by the fourth section of the statute of 1799, c. 87.
It is also admitted that fifteen of the persons mentioned in the certificate are regularly members of the Episcopal church, and that the defendants are willing to pay their taxes to the plaintiff when demanded in a reasonable time.
Whether these taxes can be demanded at any time, or, if not, in what time they ought to be demanded, is one question between the parties.
[#270] *On this point, we are of opinion that the persons taxed to the support of public worship in the parish must, within a reasonable time after they have notice of the assessment, notify to the parish their election to have their ministerial taxes paid over to their own minister: and if they do not, the parish have a right to pay them over to the parish minister. This right of election is founded on the third article of the declaration of rights, and is a privilege granted for the benefit of the party claiming it, ana which he is not obliged to claim, but may waive.
*241 As the public teachers in the state are maintained by the annual payment of salaries, it must be presumed that a parish will not long retain parish taxes in their treasury, but will pay them thence for the uses for which they were assessed. And if a man, having this privilege, will wilfully or negligently omit to claim it in a reasonable time, the presumption is very strong that his intention is not to interrupt the parish in paying over his ministerial taxes for the use for which they were assessed, and that he waives his privilege.
For the same reason, his minister ought in a reasonable time to demand those taxes of the parish ; for to demand them is a privilege which he is not obliged to claim, but may waive.
The next question is, What is a reasonable time in such cases As the parish minister receives an annual salary, it would be unreasonable to indulge any man, having this privilege, with so long a time to make his election, that the money, in the usual course of parish transactions, must have been paid out of the treasury, and the parish be obliged to make another assessment to refund it. But the parish may assess the ministerial taxes ac any time within the year, even at the close of it, and there may be delays in giving notice of the assessment to the persons taxed. Combining these considerations, we think that the party having the privilege in question ought to give the parish notice of his election, and his minister ought to demand the money within a year after the assessment is made. This time we mention as a general rule. There may be cases in which it may be proper to enlarge the time, according to the circumstances which may attend them; as if there was an unreasonable delay in, notifying the taxes assessed.
* There are three persons, whose taxes are demanded [ * 271 J by the plaintiff, who are denied by the defendants to be members of the Episcopal society, within the meaning of the third article of the declaration of rights : because it does not appear from the case that they cannot conscientiously worship with a congregational society. One of these persons joined the Episcopal society from dissatisfaction at the settlement of the present Congregational minister. No particular reason is assigned for the secession of another of them ; but it is stated that they both have usually attended public worship with the Episcopál society, and have been officers therein. The third seceded because he could not obtain convenient accommodations for his family in the parish meeting-house, but has, ever since his secession, attended the ministry of the plaintiff. Conscientious scruples are not assigned in the case for the separation of these three persons.
In fully considering the third article, we are satisfied that any man, leaving a Congregational society, and honestly and in good *242 faith uniting himself to a regular Episcopal society, is entitled to the privilege in question ; for he is then a member of a regular society of a denomination different from the parish society ; and if he usually attends public worship with the Episcopal society, the minister of it is his minister. And the article provides that all moneys paid by the subject to the support of the public worship, and of the public teachers there mentioned, shall, if he require it, be uniformly applied to the support of the public teacher of his own religious sect or denomination, if there be any on whose instructions he attends. And we should be unwilling to admit that so great is the distinction among the different denominations of religious societies in this state, that no conscientious man could honestly unite and worship with more than one of them, as his personal convenience or the accommodation of his family should require. And with whichever he united and worshipped, that must be considered as his society, so long as this .union should continue.
Bidwell and J. S. Williams for the plaintiff.
Wheaton for the defendants.
■ Judgment must therefore be rendered for the plaintiff, for a part of the taxes he has sued for. As none of these persons signified to the parish their election until April, 1807, in which [ *272] * month their taxes were demanded by the plaintiff, he can recover only the taxes assessed in the year 1806; the taxes of the prior years appearing to have been assessed more than a year before the election was notified to the parish.